IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:23-cv-00142-MR-WCM

| | |
|---|---|
| CINDA FUSSELL, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SANOFI-AVENTIS U.S. LLC; and ) <br> SANOFI US SERVICES INC. ) <br> *formerly known as* ) <br> Sanofi-Aventis U.S. Inc. ) <br> ) <br> Defendants. ) | MEMORANDUM AND RECOMMENDATION |

This matter is before the Court on Defendants' Motion for Judgment on the Pleadings (Doc. 27), which has been referred to the undersigned for the entry of a recommendation.

I. Background[1]

This case is one of many that have been transferred to various district courts from the multidistrict litigation, In re Taxotere (Docetaxel) Products Liability Litigation MDL, No. 2:16-md-02740-JTM-MBN (E.D.L.A.), MDL No. 16-2740, pending before the Eastern District of Louisiana (the "MDL Court"). The claims center on the plaintiffs' use of Taxotere or docetaxel[2] in connection

---

[1] Additional background appears in the undersigned's Order on Plaintiff's Motion to Amend, which is being issued contemporaneously with this Memorandum.

[2] Docetaxel is the generic version of Taxatere. See Doc. 7-28 at 2 n. 1.

with their chemotherapy treatment for breast cancer and their subsequent permanent hair loss (or, "alopecia"). See Doc. 7-11 at ¶ 5.

On March 19, 2018, Cinda Fussell ("Fussell") filed her Short Form Complaint. Doc. 1.

On September 27, 2018, the plaintiffs filed a Second Amended Master Complaint. Doc. 7-26. Consequently, the allegations regarding Fussell's claims are found in her Short Form Complaint and the Second Amended Master Complaint.[3]

On July 9, 2019, the MDL Court found that the claims of certain plaintiffs were barred under Louisiana law by the applicable statute of limitations and granted various motions for summary judgment. See Doc. 7-28.

On May 11, 2020, the MDL Court entered "Pretrial Order No. 105 (Short Form Complaint Allegations and Amendments – Statute of Limitations Order)" ("Pretrial Order 105," Doc. 7-51), which was applicable to plaintiffs who intended to amend their Short Form Complaints in light of the MDL

---

[3] Fussell's Short Form Complaint incorporated the First Amended Master Complaint. Defendants answered the First Amended Master Complaint on October 16, 2017. Doc. 7-17. It appears that the plaintiffs intended their Short Form Complaints to supplement the allegations in the operative master complaint, and that the answers to the First Amended Master Complaint were intended to respond to any subsequent amendment to the master complaint See Doc. 7-26 at ¶ 3; MDL Court, Doc. 230 at 2 ("each Defendant shall be deemed to have answered all cases pending in, filed in, or subsequently transferred to the MDL upon filing of a Master Answer….").

2

Court's rulings on statute of limitations issues.

On October 23, 2020, the parties filed a "Stipulation Regarding Pretrial Order No. 105" (the "Stipulation," Doc. 7-60), which set out the parties' agreements regarding the amendment of short form complaints following Pretrial Order 105.

On May 19, 2023, the MDL Court transferred the instant matter to this Court. Doc. 7-116; Doc. 7-116 at 8.

On July 26, 2023, Defendants filed the Motion for Judgment on the Pleadings. The Motion for Judgment on the Pleadings is fully briefed. Docs. 32, 33; see also Doc. 40 (Defendants' Notice of Supplemental Authority).[4]

## II. Legal Standard

"A Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." Drager v. PLIVA USA, Inc., 741 F.3d 470, 474 (4th Cir. 2014).

Courts apply "the same standard for Rule 12(c) motions as for motions made pursuant to Rule 12(b)(6)," Burbach Broadcasting Co. of Delaware v.

---

[4] Fussell has attached two dermatology articles and an expert report to her response to the Motion for Judgment on the Pleadings. However, Fussell has not explained why it would be appropriate for the Court to consider those materials, and the undersigned has not relied on them in issuing this Recommendation. See Greene v. Mullis, 829 Fed. Appx. 604 (Mem) (4th Cir. 2020) (unpubl.) ("We may also consider authentic, relevant documents attached to the complaint and the motion to dismiss, and take judicial notice of matters of public record, including court orders and filings in Greene's prior cases").

3

Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002) (citing Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999); Pacific Ins. Co. v. American Nat'l Fire Ins. Co., 148 F.3d 396, 405 (4th Cir. 1998)), except that, for a Rule 12(c) motion, courts consider the answer in addition to the complaint. A. S. Abell Co. v. Baltimore Typographical Union No. 12, 338 F.2d 190, 193 (4th Cir. 1964) ("On a motion for judgment on the pleadings made pursuant to Rule 12(c), only the pleadings are considered, and thus the District Court, in considering only the complaint and answer . . . properly observed the scope of the motion before it.").

In that regard, courts "are required to accept all well-pleaded allegations of [the] complaint as true and draw all reasonable factual inferences in [the plaintiff's] favor." Massey v. Ojaniit, 759 F.3d 343, 353 (4th Cir. 2014) (citing Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir.1999)). The court, however, is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; see Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (finding the well-pled factual allegations must move a plaintiff's claim from conceivable to plausible); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Nor does a court accept as true "unwarranted inferences, unreasonable conclusions, or arguments." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n. 26 (4th Cir. 2009).

## III. Discussion

In the Second Amended Master Complaint, the plaintiffs allege that due to their permanent alopecia, they were "stigmatized with the universal cancer signifier—baldness—long after they underwent cancer treatment" and that their hair loss altered their "self-image, negatively impacted their relationships, and others' perceptions of them, leading to social isolation and depression even long after fighting cancer." Doc. 7-26 at ¶ 6. The plaintiffs also allege that "[u]nlike the temporary and reversible alopecia that ordinarily results from chemotherapy," the use of docetaxel resulted in "Permanent Chemotherapy Induced Alopecia [PCIA], which is defined as an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy." Doc. 7-26 at ¶ 181.

In her Short Form Complaint, Fussell alleges that she experienced permanent hair loss following treatment using some form of docetaxel and asserts claims for "strict products liability–failure to warn," negligence, negligent misrepresentation, fraudulent misrepresentation, fraudulent concealment, and fraud and deceit. Id. With respect to the timing of Fussell's injury, in response to a question asking Fussell to state the "[f]irst date and last date of use (or approximate date range, if specific dates are unknown) for" her use of docetaxel, Fussell stated only "2008." Doc. 1 at 4.

Under the most permissive reading of that response, the alleged end-

5

date of Fussell's chemotherapy was December 31, 2008 and her permanent hair loss began six months later, on June 30, 2009.

Fussell filed her Short Form Complaint on March 19, 2018. Doc. 1.

Defendants contend that all of Fussell's claims are barred by a statute of repose, and that her claims for "strict products liability–failure to warn," negligence, and negligent misrepresentation are barred by the statute of limitations. Docs. 27, 28.

### A. The Statute of Repose

"A statute of repose creates a substantive right in those protected to be free from liability after a legislatively-determined period of time." First United Methodist Church of Hyattsville v. U.S. Gypsum Co., 882 F.2d 862, 866 (4th Cir. 1989).

Here, the parties agree that in 2008, N.C.G.S. § 1-50(a)(6) was in effect and provided that "[n]o action for the recovery of damages for personal injury, death or damage to property based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than six years after the date of initial purchase for use or consumption." The parties also agree that North Carolina courts have described this provision as being a statute of repose, and that, when the statute applies, a plaintiff must prove that her suit was filed no more than 6 years after the date of the "initial purchase" of the

6

involved product. See Doc. 32 at 2; Doc. 28 at 13.[5]

Assuming Plaintiff's "initial purchase" of docetaxel occurred on the last day of 2008, any claims filed after December 31, 2014 would be time barred.

Plaintiff filed her Short Form Complaint in March of 2018 (more than 3 years after that deadline) but argues that N.C.G.S. § 1-50(a)(6) does not apply, because she has alleged claims that trigger the "latent disease exception."

In Wilder v. Amatex Corp., 314 N.C. 550 (1985), the North Carolina Supreme Court concluded that a different statute of repose than the one at issue here did not apply to a plaintiff's claim that he had developed asbestosis as a result of his prolonged exposure to the defendant's chemicals and explained that:

> A disease presents an intrinsically different kind of claim. Diseases such as asbestosis, silicosis, and chronic obstructive lung disease normally develop over long periods of time after multiple exposures to offending substances which are thought to be causative agents. It is impossible to identify any particular exposure as the "first injury." Indeed, one or even multiple exposures to an offending substance in these kinds of diseases may not constitute an injury. The first identifiable injury occurs when the disease is

---

[5] N.C.G.S. § 1-50(a)(6) was subsequently repealed, and N.C.G.S. § 1-46.1(a)(1) was enacted. That provision, which became effective October 1, 2009, provides a 12-year statute of repose. However, no party argues that a 12-year statute of repose applies here. See Cramer v. Ethicon, Inc., No. 1:20-cv-95-MOC-WCM, 2021 WL 243872, at *4 (W.D.N.C. Jan. 25, 2021) ("courts applying North Carolina law have consistently applied N.C. GEN. STAT. § 1-50(a)(6)'s six-year statute of repose in cases where the product in question was first purchased or delivered, as here, before October 1, 2009") (collecting cases).

7

> diagnosed as such, and at that time it is no longer latent.

> 314 N.C. at 557.

The Fourth Circuit, following <u>Wilder</u>, has applied the "latent disease exception" to the 6-year statute of repose in N.C.G.S. § 1-50(a)(6), as well as to a separate statute of repose. <u>See</u> <u>Hyer v. Pittsburgh Corning Corp.</u>, 790 F.2d 30, 34 (4th Cir. 1986) (concluding that the statute did not bar the plaintiff's claim for damages for asbestosis even though the alleged product was purchased more than six years prior to the alleged onset of the disease); <u>Stahle v. CTS Corp.</u>, 817 F.3d 96, 98 (4th Cir. 2016) (applying latent disease exception where plaintiff alleged he was diagnosed with leukemia following childhood exposure to toxic discharges and supporting that conclusion, in part, by relying on <u>Wilder</u>, and "re-affirm[ing]" the court's understanding "that 'the [North Carolina] Supreme Court does not consider disease to be included within a statute of repose directed at personal injury claims'").

"The latent disease exception to the statute of repose applies where [1] 'the plaintiff's injury is a disease, (2) it is difficult to establish the exact time of injury (when the disease process started) and (3) it is difficult to establish that the disease was caused by the product.'" <u>Fulmore v. Johnson & Johnson</u>, 758 (E.D.N.C. 2022) (quoting <u>In re Mentor Corp.</u>, No. No. 2004 4:08-MD-2004, 2016 WL 4385846, at *2 (M.D. Ga. Aug. 15, 2016) (analyzing North Carolina law)).

8

Here, Fussell argues that her claims fall within the exception because: 1) PCIA is a "disease," see Doc. 32 at 7; 2) the diagnosis of PCIA was "not developed in the medical literature" until the 2010s; and 3) Fussell was treated with a combination of three chemotherapy drugs (docetaxel, Adriamycin, and Cytoxan), such that it was not clear in 2009, which, if any, of these products caused her PCIA. See Doc. 32 at 6-8.

The undersigned, though, is not persuaded that Fussell's claims fall within the latent disease exception.

As an initial matter, there is some question as to what should be considered the "disease" in this case. Fussell's allegations characterize breast cancer as being the "disease" at issue, and her subsequent hair loss as an injury (or side effect) stemming from the treatment of that disease. See Doc. 7-26 ¶¶ 133 & 153; see also Doc. 7-26 ¶ 181 (alleging permanent hair loss "caused by" docetaxel).

However, even assuming that PCIA is viewed as a disease for purposes of Fussell's claims, it is not a latent one; "[a] true latent disease, such as the asbestosis at issue in Wilder, or the plaintiff's leukemia associated with exposure to toxic discharges over many years in [Stahle], develops within the body over an extended time period before manifesting any symptoms." Cramer, 2021 WL 243872, at *5 (W.D.N.C. Jan. 25, 2021). Here, Fussell alleges that her symptoms manifested 6 months following the completion of her chemotherapy

9

regimen. Similarly, the allegations in the Second Amended Master Complaint – specifically those regarding stigmatization because of her permanent hair loss – indicate that the onset of PCIA was obvious. Cf. Bullard v. Dalkon Shield Claimants Trust, 74 F.3d 531, 532 (4th Cir. 1996) (pelvic inflammatory disease first diagnosed twenty-seven months after defendant's device was inserted); Guy v. E.I. DuPont de Nemours & Co., 792 F.2d 457, 458 (4th Cir. 1986) (pulmonary disease diagnosed twenty-eight years after period of twenty-five year exposure to the chemical diisocyanate began); Silver v. Johns–Manville Corp., 789 F.2d 1078, 1079 (4th Cir. 1986) (mesothelioma first diagnosed thirty-nine years after twenty-year period of exposure to asbestos began); see also Cramer, 2021 WL 243872; Douglas v. Sandoz Pharms. Corp., No. 1:98cv911, 2000 WL 33342286, at *5 (M.D.N.C. July 18, 2000) (finding that the plaintiff's stroke was not a "disease" because the point at which she suffered the stroke was readily identifiable, even if the exact series of events leading up to the stroke could not be easily established).

Finally, although Fussell argues in her briefing that it would have been difficult to determine which product she used during chemotherapy caused her hair loss, her Short Form Complaint does not reference the use of any product other than docetaxel.

Accordingly, the undersigned will recommend that Fussell's claims be dismissed.

### B. The Statute of Limitations

Alternatively, Fussell's claims for "strict products liability–failure to warn," negligence, and negligent misrepresentation are barred by the 3-year statute of limitations set forth in N.C.G.S. § 1-52(5).

Defendant contends that these claims accrued when Fussell experienced permanent hair loss, which would have begun on June 30, 2009 (six months after her use of docetaxel ended). See also In Re: Taxotere (Docetaxel) Products Liability Litigation, 995 F.3d 384, 390 (5th Cir. 2021) ("As a matter of law, the injury of "an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy" is sustained when, six months after the completion of chemotherapy, a person has an absence of or incomplete hair regrowth."); In Re: Taxotere (Docetaxel) Products Liability Litigation, No. 18-11728; MDL No. 16-2740, 2021 WL 230243, at *2 (E.D.La. Jan. 22, 2021) ("On the face of the pleadings, then, Plaintiff sustained her injury in April 2010, six months after she completed her chemotherapy treatment. Unless Plaintiff proves otherwise, this is when the limitations period began to run on her claims.").

In response, Fussell argues that the "discovery rule" set forth in N.C.G.S. §1-52(16) applies. Under that provision, in cases of personal injury, "the cause of action… shall not accrue until bodily harm to the claimant…becomes apparent or ought reasonably to have become apparent to the claimant,

11

whichever event first occurs."

N.C.G.S. § 1-52(16) "is intended to apply to plaintiffs with latent injuries." Robertson v. City of High Point, 129 N.C.App. 88, 91 (1998), *disc. rev. denied*, 351 N.C. 370 (2000); see also Pembee Mfg. Corp. v. Cape Fear Const. Co., Inc., 313 N.C. 488, 493 (1985) (explaining that N.C.G.S. § 1-52(16) modified "the sometimes harsh common law rule by protecting a potential plaintiff in the case of a latent injury by providing that a cause of action does not accrue until the injured party becomes aware or should reasonably have become aware of the existence of the injury").

Here, as discussed above, Fussell's allegations indicate that the onset of PCIA was obvious. Consequently, the discovery rule in N.C.G.S. § 1-52(16) does not apply to Fussell's claims. See also In Re: Taxotere (Docetaxel) Products Liability Litigation, 2021 WL 230243, at *2 ("Even setting aside the definition of PCIA in the Master Complaint, Greer knew or should have known six months after her treatment that something was amiss when her hair had not grown back as she expected").[6]

---

[6] Defendants also argue that Fussell has failed to plead her claims for fraudulent misrepresentation, fraudulent concealment, and fraud and deceit with the requisite particularity under Rule 9(b) of the Federal Rules of Civil Procedure, and that North Carolina law does not recognize a cause of action for strict products liability. Considering the undersigned's recommendation that this matter be dismissed as untimely, the undersigned does not reach these additional arguments.

## IV. Recommendation

For the reasons set out herein, the undersigned **RESPECTFULLY RECOMMENDS** that Defendants' Motion for Judgment on the Pleadings (Doc. 27) be **GRANTED**, and that Fussell's claims be **DISMISSED WITH PREJUDICE** as untimely.

Signed: March 12, 2024

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).